Good morning. Kara Hartzler, Federal Defenders for Jose Zepeda-Gonzalez. The sole remaining question in this case is whether a person who has only one valid deportation and does not return to the United States within five years of that deportation can be convicted of a legal reentry because he was still required to obtain advanced consent to reapply for admission. The answer is no, according to the plain language of the statute, this Court's case law, and the agency's own policy. Thus, no rational fact finder could have found Mr. Zepeda guilty of illegal reentry, and the District Court erred in denying his motion for judgment of acquittal. First of all, the five-year advanced consent requirement from 8 U.S.C. 1182 applies to the illegal reentry statute of 1326. And the easiest place that we can see that is in the plain language of 1326, where it says that a person, it contains two exceptions, and the second exception says that a person cannot be convicted if he was not required to obtain advanced consent under this chapter. Now, both 1182 and 1326 are in Chapter 12. Therefore, under the plain language of 1326, the five-year time limit in 1182 applies. And because Mr. Zepeda was outside of that time limit, then the question's over. He doesn't he's not criminally liable for 1326. Well, if, as a matter of policy, I mean, there's a couple areas that I want to talk about. But Aguilera-Rios, but I'll come back to that after. That's more sort of a government question, but I want to ask you, too. But as a matter of policy, wouldn't the rule that you're advocating effectively transform Section 1326 collateral challenges into a direct appeal, because it would require courts to apply intervening changes in the law to an immigration judge's removal? First of all, I'm not sure I would say that it's a collateral attack, because collateral attacks are actually situations where if you prevail on that collateral attack, it overturns the underlying removal. And here it won't. Even if we win, Mr. Zepeda is still deported. He can't go back without doing a separate motion to reopen and say that he, you know, has a right to be here. But as to this case, double jeopardy would attach, right? That, I believe that is correct. I'm not sure I'm following your question, but I would say that the term collateral attack, we would just suggest that it was. Because we're talking about a conviction here, right? We are talking about a conviction. We're not talking about just the deportation proceeding. Exactly. So if we buy your argument, then does double jeopardy apply to his being charged under these facts? I don't think double jeopardy applies, because if the court agrees with us, then he can't be convicted. Well, so it's insufficiency of the evidence. Exactly. And if it's insufficiency of the evidence, then double jeopardy applies. If he came back in the future, is that your question? Not in the future, but he can't be retried on this and add other priors or whatever. Well, double jeopardy doesn't apply to civil proceedings. So in other words, if, for instance, the court finds that his underlying removal order is valid, that would be a civil finding, and it wouldn't – double jeopardy wouldn't attach in that sense, if I'm following the court's question. Well, okay. But it's U.S. v. Cepeda-Gonzalez. Right? Yes. And what was he charged with? He was charged here with 1326. Okay. So that's a criminal offense. Correct. So if we buy your argument, he can't be retried on this criminal offense. Not on this particular one. This particular one. If he comes back again. Now, for instance, if after these proceedings are done, Mr. Cepeda is put and, you know, given another order of removal, for instance, if he's put in front of an immigration judge and he's deported and then he comes back, then there would be – He doesn't get a pass forever. No, absolutely not. The – well, now, Aguilera-Rios isn't final yet. That is true. The court has – or the government has sought to extensions to ask for this court for rehearing en banc. So if that went en banc, does that weaken your argument? Well, I think we still certainly have a chance that the en banc would go the same direction as Aguilera-Rios. You might want to wait if it went en banc to see the result. Well, we would actually urge this court certainly not to wait, and the reason is because – Well, because it's better for you now. Correct. But also, my client is scheduled to be released in December. I don't think there's any way that any en banc proceedings could be resolved before my client would already be out of detention. And so for the purposes of saying, you know, he would like to get out of detention, out of incarceration. So we would urge the court not to wait for Aguilera-Rios. Now, your position is that the Fourth, Fifth, and most recently the Sixth Circuits all got the statutory interpretation question at issue here wrong. Correct. How do Three Circuits just get everything so wrong? The Supreme Court doesn't seem to have a problem with it, with finding that Three Circuits in the past have gotten something wrong. Now, you know, we would also say that, for instance – Well, when the Ninth Circuit says otherwise, sometimes then they're willing to say something. I can give you a good case where the Supreme – where Ninth Circuits went the other way and the Supreme Court said the Ninth Circuit was right. It doesn't happen very often, but occasionally they see the light. I would agree with that, Your Honor. I would agree with that. Back to your question, Judge Callahan. I think the reason that these Three Circuits were wrong is because they fundamentally misunderstood what's at issue here, that this is a two-step process. Now, the D.C. Circuit got it right. And we've also pointed out that the Second Circuit and the Tenth Circuit, while not holding this in the context of a Rule 29, also have found the same way as this Court has, that 1326 just relates to advanced consent and not actual permission, not a visa or anything else that would allow a person to legally come back. So going to the policy issue that I think you raised, there is this concern, well, you know, if the Court rules in our favor, is that going to open some sort of floodgates? It's not. First of all, because anyone who has a valid aggravated felony is always going to be subject to advanced consent. Second of all, anyone who has two valid orders of removal is going to be subject to 20 years of advanced consent. And moreover, I think the fact that this is a pretty rare circumstance is evident by the fact that this Court has never actually reached this issue, this specific issue before. So I don't think that we need to be worried about any kind of floodgate situation here where suddenly we can't convict anyone under 1326. And if I understand the government's argument, though, on some level, well, there's also a policy concern in decisions like United States v. Fidel Mendoza. And what I'm understanding the government to say is they say that we're not bound by Aguilera-Rios because Aguilera-Rios didn't follow a prior prejudge panel, and so which I'm not really sure that, I mean, we're not free to disregard three-judge panels. But as I understand it, everyone's seeming to say that there's problems out there and that the Ninth Circuit isn't being consistent. Yes. And I would also say that the Court here is bound by Aguilera-Rios, at least until if there was some sort of petition for rehearing granted. And we went on bonk and said, okay, that implies, implicates Aguilera-Rios was problematic because of a prior prejudge panel, and then we've just got to straighten this all out. There's a lot of pinballing. That's right. And I would also say that this is not just about Aguilera-Rios. It's about Camacho-Lopez and it's about Gomez, which Aguilera-Rios relied on. So it's not as though Aguilera-Rios is some bizarre outlier. It was based on, on some, you know, recent precedent from this Court that we would also say that this Court is bound by in this case. Kennedy, your concern about the timing on this, it's now, what, August. He'll be out in December? He's scheduled to be released in December. All right. So if you were lucky, you'd get a decision in a month, if you were really lucky, which means you're talking about two or three months of serving time. Now, Judge Wardlaw would tell us, no, that's a tremendous punishment and we never leave anybody in jail for even a day. But that's a valid point. Right. But that's what you're concerned. It wouldn't make the case move. That's correct. And, Your Honor, I can certainly say, and I'm sure this Court is aware, that in other cases where we have argued that there is, you know, the Court should wait because we've done a petition for rehearing that's pending, we have not seen the Court wait in those cases for the outcome. And so it's not my understanding that that's a general practice of the Court to necessarily wait in these kinds of situations. So how many times has he been caught here illegally? My understanding would be, well, he presented at the port of entry. So if you count that, that would be 2003 and then 2010. But isn't there in the record a 2007 entry in order of deportation? I am not aware of that unless it's ER 199. Was it a reinstatement? Or if it was a reinstatement, certainly we would be arguing that that doesn't count. It's a reinstatement, but I'm not sure of what. It's 2007. I guess it goes back to the 2000. I believe there are several reinstatements, but they do go back to the 2000 removal, which we are saying is invalid. And under Arias or Donas, therefore, those can't be relied on. So just to – I'm sorry. No, I was going to say we've taken too much of your time. So you haven't done a lot left for the merits, but we'll give you a little extra time. Okay. You better get to the merits. Okay. I just think that the language is very plain here. First of all, the plain language of the statute says under this chapter, both 1182 and 1326 are under this chapter. Moreover, if the Court were to find that the 5-year limitation didn't apply, it would render that exception meaningless, which certainly is a statutory construction issue. Moreover, this Court in Pena-Jaime, other decisions, has always linked the advance consent element to the special permission to reapply, which is exactly what we're saying here and is exactly what puts the 5-year limitation on. Also, the form that we included as an appendix to a reply brief shows that even if a 5-year time limit expired, there's no way for him or her to do so. There's no process or way that exists. So everything in the record here just demonstrates that Congress clearly intended to put that 5-year limit on to the advance consent, and because the he came back without outside of that 5-limit period, he can't be convicted. And I think I'll save the remainder of my time for rebuttal, if that's all right with the Court. Thank you. Good morning. Good morning. May it please the Court, David Finn for Appellate United States of America. The definition of removal found in 8 U.S.C. 1182A9 acts in no way to constrain and act as a time limit on criminal liability under Section 1326. This is the finding of both the Fourth, Fifth, and the Sixth Circuit, and it's the finding that we urge the Court to adopt today. Nowhere in Section 1326 is there any mention of any time limit. The only time it does mention a time limit is that if anybody who enters, attempts to enter, or is at any time found in the United States shall be prosecuted. That's the only time limit. There's no reference to inadmissibility. There's no reference to 1182, and there's no reference to any 5- or 10-year defense in that statute. What that statute doesn't hold is it holds a couple narrow exceptions to when 1326 can be brought, and I'll address those in just a second. But absent any express language in the statute limiting criminal liability under 1326, we'd urge the Court to follow the Fourth, Sixth Circuit's rationale in Hoya-Martinez that the Court should not imply a restriction under 1326. Just with that ignoring Aguilera-Rios, I didn't find your argument that we're not bound by that to be persuasive. You know, that's, it's not like that, you know, there's a lot of things I don't like to do, but if, but, you know, we do have to follow three judge panels unless, you know, it isn't final yet. But I didn't, maybe you can better explain to me why, you know, I understand your argument to be that Aguilera-Rios really shouldn't have been decided that way because it didn't distinguish a prior three-judge panel, but I don't know where that makes it not binding on me. Yes, Your Honor, and I understand. I don't want to sound like sour grapes here when, obviously, I disagree with it, and we are in the process of seeking en banc petition. And if the Court finds that the Alva Gen, Genio-Rios and the relying-on-team does not, was not a statement that collateral attack on a civil order should not, is not applicable in these situations, if the Court's not going to make that finding, then you are bound by Alva Genio-Rios. Aguilera-Rios. Easy for me to say, huh? It's a good day to have trouble talking, right? In that case, then the Court is bound until there's an en banc petition here, until it's final. We are in the process of seeking en banc petition. I obviously disagree with it, and I express my reasons, but we need not go there for this case. I think that this case can be decided, regardless of Aguilera-Rios, on the merits, specifically that there's no time limit in 1326 when prosecutions can be brought. The only time limit is found in at any time. And the Fourth, Fifth, and Sixth Circuits have clearly held that that's a clear statement, that there's no restriction read into the statute by another administrative definition in 1182 of what a grounds of removability is under 1182A9. Now, the question then becomes, and the real difficult part is, what are those two exceptions talking about, then? Why is it talking about express consent? Why is it talking about advanced consent in 1326A2? And in the reply brief, appellant makes the argument that, well, if we don't have a grounds of removalability, then those two exceptions mean absolutely nothing, and so, therefore, they must refer to 1182. But that's not true. I think that if we take a step back and we look at the entire Immigration and Nationality Act, the entire how the process actually works, it informs what those two exceptions actually mean, and I can provide concrete examples that of how those would apply under the plain reading of the statute. So starting back on a step back, the Immigration and Nationality Act, for these purposes, you have two groups of people, those that need advanced consent to come to the United States and those that don't. The group that does not need advanced consent is, for example, the visa waiver countries. A citizen of Britain does not need advanced consent from the Department of Homeland Security to come to JFK and present their passport and get their 90 days in the United States. That's different from somebody from a country that's not a visa waiver country, such as Mexico. A person from that country cannot just come to the Port of Entry, present a Mexican passport, and expect to be admitted. People from those countries have to seek advanced consent from the Attorney General of the Department of Homeland Security. The most common way they do that is by obtaining a visa, either a border crosser card, an LPR card, a work visa, some form of visa that allows them to come to the Port of Entry and apply for admission to come into the United States. So we have those two groups. With those two groups in mind, we look to Section 1326 and those two exceptions in subsection 2A and B. In subsection A, it specifically refers to prior to a person who's previously been deported. So I understand, though. You're saying we can go there even if we believe we're bound by Aguilar Arreos, or do we have to wait for that to be cleared? Yes. We can go there. I'm sorry. You can reach the substantive merits of this case without any reliance on Aguilar Arreos because it's a Rule 29 motion, and what we're saying in our response to the Rule 29 was that there is no time limit. He has a 2003 expedited removal that's completely separate and distinct from the 1999 removal order that was based upon the aggravated felony. That removal order, there's no time limit, as Appellant argues. There's no five-year time limit in the statute that we have to bring a 1326 prosecution. This is a found-in case. The statute says an alien who's previously deported that's found in the United States at any time is subject to criminal liability. But then it has those two narrow exceptions. So in this case, under the Rule 29 motion, what we're arguing is that he's got the valid removal order in 2003, the expedited removal. There's no problem with that. No problem was raised below and no problem was raised here. He's got a valid removal order. He is then at any time found in the United States. Under the statute, he was guilty as charged and the Rule 29 motion was properly denied. That's all this Court needs to find to resolve this case. Now, I'm attempting to provide some context in response to the reply brief that this whole subsection 2A and B don't mean anything if they don't mean what Appellant thinks that they mean. And I'm trying to lay that out by saying there's examples where this applies regardless of the time frame. For example, in subsection 2A, prior to an application for admission, which under the INA is defined as actually presenting yourself at the border, that's the subsection 2A-4, I believe, is that somebody presents themselves for admission. And that person has expressly consented by the Attorney General has expressly consented to such aliens reapplying for an admission. That specific example could apply to somebody who is a visa waiver country participant, somebody from Britain or Japan who does not need advance consent. But they've been deported. For example, somebody from Britain overstayed their student visa, was deported, comes back and wants to come back. They don't need a visa to come back to the United States to visit, but they do need advance consent from the Attorney General. So what this subsection is saying is that somebody from the visa waiver country who has obtained advance consent can come back and not be subject to 1326. They're not violating the law. And if you look at the actual visa waiver statutes, it specifically references that exact scenario. And it says, you know, person with visa waiver, you're in that country, Britain, Japan, you do not normally need advance consent. But if you've been deported, you must still reapply for admission. So you have to clear that hurdle, but you don't have to then get a visa because you're still in a visa waiver country. So that's the context of subsection A, that little narrow exception. And actually, it could be a fairly large exception of people from visa waiver countries. The other narrow exception found in subsection B is a little bit broader. Respect to an alien previously denied admission or deported, that alien establishes that they were not required to obtain such advance consent. I can think of a, you know, trying to put this in context, I thought of a real clear example to that. For example, somebody that applies, comes here and applies for asylum, even though they've been previously deported. If they've been previously deported and they come to the United States for the purpose of seeking asylum, they're not required to seek advance consent to seek asylum. So that would fly in the face of kind of the urgency and the need to come to the United States to apply for asylum. If we said, no, you're being persecuted in Somalia or whatever, we need you to stay there and file for advance consent to come to the United States because you've been previously deported. So that person, even though they did not seek advance consent and have been deported, can come to the United States, and because they're seeking asylum, they would not be subject to 1326 liability. And that's a rational, fair rule. And I think that just providing these two examples by reading the statute in plain language and not implying anything under 1182 shows that the statutory scheme does make sense. There are concrete examples. And it's not necessary to read a five- or ten-year time limit into these statutes in order to have them make sense. And because the Court should hesitate to read any such requirement or limitation to the statute, unless absolutely necessary, I think that the Fourth, Fifth, and Sixth Circuits have all unanimously decided, all three have decided this issue and adopted the government's position, that the statute, the language of the statute says any time. The fact that, you know the Fourth, Fifth, and Sixth Circuits consistent with Aguilar Rios? On this issue, they have not put this issue in context with Aguilar Rios, because the issue that I'm referring to is the issue that there's no time limit on when a 1326 can be brought, that you don't read into the statute a time limit, take one from 1182 as appellant would suggest, a five- and ten-year time limit, and read that into the statute. I don't think that the issue in Aguilar Rios is, I think, in my, you know, I would say humble researching abilities, there's, it's quite kind of a question of first impression. And that's why, you know, there's so many issues with it that, you know, not to be sour grapes, I think need to be addressed en banc. But we need not go there. We need only decide this case on the same rationale as the Fourth, Fifth, and Sixth Circuit, that there is no time limit in 1326, that those two exceptions do not require that a time limit be brought in every case. And finally, I just want to make one additional point, that even if the Court finds that there is a time limit, that they read into, the Court reads into 1326, the time limits discussed in the grounds of inadmissibility in 1182a9, the government's case would still survive the Rule 29 motion. This is because there's more than one removal. As an administrative, if we're going to apply the administrative definition, that if you've got one removal, it's five years. If you've got two or more, it's 20. Then, in this case, there's no doubt that administratively, Zepeda, the appellant, has more than one removal. For administrative purposes, he's got three. He's got the 1999, which was, he was actually removed in 2000. He's got the 2003 separate and independent expedited removal. And then the reinstatement is in 2010. So he's got three separate removal orders, and administratively, under the plain language of the definition that appellant argues, he's barred for 20 years. So if the Court reads into 1326, the time limit, the United States has clearly met his burden that he's been reentered within that 20-year time period in this case. If there's no further questions, I'll sit down. Thank you. Thank you. Just to address the government's last point first, for administrative purposes, this Court clearly held in Arias-Ordonez that a reinstatement can't be used. So just as with Aguilar-Rios, this panel doesn't have the authority to overrule that decision and use one of the reinstatement orders. So on that point, we would argue that the government's argument is flawed. What I want to sort of lay out is the government takes this position here that this is not a separate, these are not two separate steps, that this is just one step. The problem with that argument is this. Every single time the government goes in to do a 1326 case, a trial, the government presents evidence, usually an AFAL custodian, saying there is no evidence that the person submitted an I-212. There is no evidence that the person complied with the regulations in 8 CFR 212.2. That separates those two into distinct steps. And so the government here is completely backtracking and doing exactly the opposite of what it does in every single 1326 trial. And I'd like to read to the Court from this decision in Pena-Jaime, which says the INS, and this was in a 1326 case, it was a trial case. The INS has promulgated regulations that govern the process by which the Attorney General will consent to a deported alien reapplying for admission, ACFR 212.2. These regulations include the requirement that a deported alien must have remained outside of the United States for a minimum of five consecutive years. In other words, this Court has already held in Pena-Jaime, as well as numerous other decisions, that the advanced consent requirement is specifically linked to the five years and the regulation at 212.2. In other words, what the government is having you try to do here is contrary to every single case where the government proves its burden in a 1326 trial. So unless the Court has any other issues or questions for me, I think we'll – I'll submit on that.  Thank you.
judges: REINHARDT, WARDLAW, CALLAHAN